UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MELINDA AVERILL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-445-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that she is disabled by anxiety disorder, had no severe impairment or combination of impairments and, hence, was not disabled. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a medically determinable impairment of anxiety disorder but no severe impairment or combination of impairments, Findings 3-4, Record at 10, and that she, therefore, had not been under a disability, as defined in the Social Security Act, from January 5, 2007, through the date

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

of the decision, Finding 5, *id*. at 14.[2]  The Decision Review Board declined to disturb the decision, *see id*. at 2-4, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

---

[2] The plaintiff was insured for purposes of SSD benefits through December 31, 2011, *see* Finding 1, Record at 10, well past the date of decision. The administrative law judge erroneously stated that her amended date of onset of disability was January 5, 2007. *See* Finding 2, *id*. The record reflects, and the plaintiff's counsel agreed at oral argument, that her alleged onset date of disability was amended at her hearing to December 1, 2005. *See id*. at 22-24. Nothing turns on the discrepancy.

## I. Discussion

The plaintiff challenges the administrative law judge's Step 2 finding on two fronts, arguing that (i) his finding that she suffered from a non-severe anxiety disorder is contradicted by the medical record and (ii) he overlooked two additional medically determinable impairments, a depressive disorder and obesity. *See* Statement of Errors at 2-9. With respect to the first point, she argues that the administrative law judge (i) ignored findings of a Disability Determination Services ("DDS") examining consultant, Edward Quinn, Ph.D., indicating that she suffered from severe mental impairments, (ii) erroneously discounted an indication by a treating physician, Allan E. Reis, M.D., that her anxiety had increased as of August 2008 on the basis that she refused an increase in her medication dosage, (iii) improperly rejected a mental residual functional capacity ("RFC") opinion of treating therapist Catherine Journey, LCSW, whose notes and opinion also reflected a severe impairment, and (iv) relied on an opinion of a DDS nonexamining consultant, Lewis F. Lester, Ph.D., who did not have the benefit of the review of the full record, including the later notes of Dr. Reis and Journey. *See id*. at 2-7. I find no reversible error.

### A. Basis of Step 2 Determination

Dr. Lester completed a Psychiatric Review Technique Form ("PRTF") dated August 27, 2007, finding that the plaintiff suffered from two medically determinable mental health impairments, depressive disorder NOS [not otherwise specified] and anxiety disorder NOS. *See* Record at 300, 303, 305. However, he judged the combined effect of those impairments non-severe, concluding that they imposed only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace, and had resulted in no episodes of decompensation of extended duration.

*See id*. at 310. The administrative law judge relied in part on the Lester opinion and in part on his own review of the complete medical record, including evidence post-dating Dr. Lester's PRTF, to arrive at the conclusion that the plaintiff had one medically determinable impairment, anxiety disorder, which imposed no restriction on her activities of daily living and only mild difficulties in social functioning and concentration, persistence or pace, and that she had suffered no episodes of decompensation. *See id*. at 13-14.

## B.  Dr. Quinn's Findings

To the extent that the plaintiff complains that the administrative law judge failed to adequately consider Dr. Quinn's findings, her argument is without merit. As the administrative law judge noted, *see id*., Dr. Quinn's report was taken into account by Dr. Lester, who nonetheless found the plaintiff's impairments non-severe. Nothing in Dr. Quinn's discussion of the plaintiff's functional capacity is patently inconsistent with a finding of "mild" restrictions. He found her capable of a number of work functions, such as following work rules, behaving in an emotionally stable manner, and completing job instructions, and noted that he had observed no difficulty with attention, concentration, persistence, pace, or memory. *See id*. at 297-98. While he did find that she might have some difficulties in certain areas, his language did not suggest that these were severe difficulties or even that they necessarily would occur. *See id*. (plaintiff "may have some difficulties interacting with others at times"; "may have also some issues in social situations"; "may have some difficulties dealing with stressors"; "may have some difficulties with reliability at this time").

That said, the administrative law judge did indeed err in failing to find a medically determinable depressive disorder – a condition either diagnosed or recognized by Dr. Quinn, Dr. Lester, and at least one treating source, James Chapman, M.D. *See id*. at 204, 298, 303.

Nonetheless, because the administrative law judge relied heavily on the opinion of Dr. Lester, who took into account the diagnosed depressive disorder, the error is harmless.

### C. Dr. Reis's August 2008 Note

In a note dated August 26, 2008, treating physician Dr. Reis noted, under the heading "Subjective: Problems:," that the plaintiff was "doing ok" but "wants to ↑ Lorazepam to 1 mg [milligram]; not as effective for anxiety[.]" *Id*. at 345. Under the heading, "Assessment: Problems/Plan:," he wrote, in relevant part: "Anxiety ↑ - declines ↑ dose" and "↑ Lorazepam to 0.5 1-2 prn [*pro re nata*, or as needed]." *Id*. The administrative law judge noted: "The last treatment [note] from an acceptable medical source is from Allan Reis, M.D., the claimant's treating primary care physician. In August 2008 he tersely noted an increase in anxiety but further noted the claimant declined an increase in medication." *Id*. at 13 (citation omitted).

The plaintiff faults the administrative law judge for failing to inquire into why she declined an increase in the dosage of her medication, as she posits is mandated by Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 4. She argues that this failing is particularly significant because the treatment record reflects that she wanted to increase her Lorazepam, and Dr. Reis did increase it from 0.5 milligrams weekly as needed to 0.5 milligrams, one to two, as needed. *See id*.; *see also* Record at 345.

SSR 96-7p does not require such an inquiry. While it notes that adjudicators may need to recontact claimants or question them at hearing regarding any explanations for non-compliance with prescribed treatment, it *directs* them, in making credibility assessments, only to take into account any explanations for failure to seek or follow treatment that were offered by a claimant or that otherwise appear of record. *See* SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 140 ("[T]he adjudicator must not draw any

5

inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

While Dr. Reis's note is indeed terse, it can fairly be characterized as noting that, although the plaintiff reported an increase in her anxiety, she declined an increase in anxiety medication. The administrative law judge properly took that into account in discounting the severity of her condition.[3]

The plaintiff further faults the administrative law judge for failing to consider that Dr. Reis, in his treatment notes, diagnosed her as having "chronic" generalized anxiety disorder and that Dr. Reis reported in January 2007 that she had "significant anxiety." *See* Statement of Errors at 4. Any error in a failure to specifically discuss these features of the progress notes is harmless. Although Dr. Lester evidently did not have the benefit of Dr. Reis's notes, he took into account the chronic nature of the anxiety problem, stating: "There is a history of mild anxiety and mild depression with effective medication management and episodic situational exacerbations. Statements of impairments and limitations are largely credible." Record at 312. Further, Dr. Reis did not assess the plaintiff, in the January 2007 note to which she refers, with significant anxiety. Rather, his statement appears in the "S," or subjective, portion of his SOAP note. *See id*. at 320; Stedman's Medical Dictionary 1650-51 (27th ed. 2000) ("SOAP" is an "[a]cronym for *s*ubjective, *o*bjective, *a*ssessment, and *p*lan; used in problem-oriented records for organizing follow-up data, evaluation, and planning.").

---

[3] The plaintiff completed a questionnaire in which she stated that she was prescribed Lexapro for anxiety and Lorazepam for panic attacks. *See* Record at 336. A medication chart indicates that her dosage of Lexapro was 10 milligrams both before and after her August 26, 2008, visit to Dr. Reis. *See id*. at 348.

6

### D. Journey's Notes and RFC Opinion

The record contains three notes related to the plaintiff's treatment with social worker Catherine Journey: (i) Journey's June 25, 2008, initial assessment, *see id*. at 327-34, (ii) a July 2, 2008, progress note, *see id*. at 326, and (iii) a September 23, 2008, progress note, *see id*. at 344. Journey also submitted a mental RFC opinion dated September 10, 2008, assessing the plaintiff overall as having moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace and as having experienced one or two episodes of decompensation, involving two family functions that summer that ended with the plaintiff withdrawing. *See id*. at 342. Journey indicated that the plaintiff's impairments or treatment would cause her, on average, to be absent from work more than four days per month. *See id*. at 343.

The administrative law judge deemed the Journey opinion "unsubstantiated and against the medical evidence as a whole[,]" adding that it was important to note that Journey was not an "acceptable medical source" and, thus, her findings could not be accorded controlling weight. *See id*. at 12. While the administrative law judge did not detail the ways in which he found Journey's report unsubstantiated and against the medical evidence as a whole, his finding is supported by substantial record of evidence. In particular, as counsel for the commissioner observed at oral argument, Journey assessed the plaintiff on intake in June 2008 with a Global Assessment of Functioning, or GAF, score of 60, *see id*. at 334, which was consistent with the GAF score of 55 to 65 assessed by Dr. Quinn when he examined her in August 2007, *see id*. at 298.[4]  Journey also noted, in her mental RFC assessment, that the plaintiff's GAF score was both

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) ("DSM-IV¬TR"), at 32. The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational
*(continued on next page)*

currently 60 and had been 60 at the highest during the past year. *See id.* at 338. Dr. Quinn's similar GAF score rating, in turn, was taken into account by Dr. Lester in evaluating the severity of the plaintiff's mental impairments. *See id.* at 312. In this sense, Journey's mental RFC opinion fairly could have been considered inconsistent with her treating notes.

The Journey assessment also fairly can be viewed as inconsistent with the Quinn assessment. Journey, for example, indicated that the plaintiff was markedly limited in maintaining social functioning and moderately deficient in concentration, persistence, or pace, *see id.* at 342, while Dr. Quinn found that she might have some difficulties interacting with others at times and might have some issues in social situations, but appeared capable of behaving in an emotionally stable manner, and noted that he observed no difficulties with attention, concentration, persistence, pace, or memory, *see id.* at 297-98.

Finally, the administrative law judge supportably assigned Journey's opinion less weight because it was not from an acceptable medical source. *See, e.g.,* Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2009) ("SSR 06-03p"), at 332 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals.") (internal quotation marks omitted); *Kresyman v. Astrue*, No. 09-00507-CV-W-NKL, 2010 WL 670248, at *5 (W.D. Mo. Feb. 22, 2010) ("The opinion of

---

functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* (boldface omitted). A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* (boldface omitted).

a treating medical source, if not a physician or other acceptable medical source, should still be considered, but those other medical source opinions are entitled to less weight than that of a treating physician.").

There was no error in the rejection of Journey's mental RFC opinion.

### E.  Reliance on Dr. Lester

The plaintiff also posits that the administrative law judge's assessment that she did not suffer from a severe mental health impairment is unsupported by substantial evidence, given that (i) Dr. Lester did not have the benefit of Dr. Reis's or Journey's later-submitted evidence, and (ii) the administrative law judge, as a layperson, was unqualified to determine that the raw medical evidence of Dr. Reis and Journey revealed no severe mental impairment.  *See* Statement of Errors at 6-7; *see also, e.g.*, *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.  In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

As the plaintiff observes, *see* Statement of Errors at 4, Dr. Reis noted in August 2008 that the plaintiff was reporting increased anxiety, *see* Record at 345, and Journey's notes, as well, appear to reflect an increase in anxiety, with Journey stating, for example, in September 2008 that she believed the plaintiff was "living in the Emotional Contraction Cycle[,]" going "from hurt to control to rage to depressed and then to shame" and living "almost constantly in anxiety[,]" *id*. at 344.

Nonetheless, I am unpersuaded that the addition of the 2008 Reis and Journey materials to the record undermines the administrative law judge's reliance on Dr. Lester's PRTF as substantial evidence of the non-severity of the plaintiff's mental impairments. As counsel for the commissioner persuasively argued, the Reis and Journey materials reasonably can be viewed as reflecting a picture of the plaintiff's functioning consistent with that set forth by Drs. Quinn and Lester. Journey assessed the plaintiff as having a GAF score consistent with that assigned by Dr. Quinn less than a year earlier. *Compare id*. at 298 *with id*. at 334. Dr. Lester anticipated that she would suffer "episodic situational exacerbations" of her mild anxiety and mild depression. *See id*. at 312. The plaintiff's reports to Dr. Reis in August 2008 of an increase in anxiety, *see id*. at 345, and to Journey in July and September 2008 of anxiety associated with estrangement from a sister and brother-in-law, *see id*. at 326, 344, fairly can be characterized as reflecting situational exacerbations, consistent with Dr. Lester's assessment.

The administrative law judge's Step 2 finding, insofar as it bears on the plaintiff's mental impairments, accordingly is supported by substantial evidence.

### F. Alleged Obesity Impairment

The plaintiff's final argument, that the administrative law judge erred in failing to find a medically determinable obesity impairment, *see* Statement of Errors at 8-9, is without merit. Per Social Security Ruling 02-1p ("SSR 02-1p"), obesity is not *per se* a severe impairment. *See* SSR 02-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009), at 255 ("There is no specific level of weight or BMI [Body Mass Index] that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes."); *see also id*. at 253-55 ("The fact that obesity is a

risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments. It means that they are at greater than average risk for developing the other impairments. . . . As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.").

The plaintiff never claimed disability due to obesity, and there is no mention of obesity in her testimony at her hearing, where she was represented by counsel. *See* Record at 16-43. Nor does my review of the record disclose medical evidence addressing obesity in the plaintiff, identifying any resultant limitations, or prescribing a treatment plan for it. Even now, she only speculates that obesity "may play a direct role in her depression impairment[,]" observing that she mentioned to Dr. Quinn that she was "bummed over [her] weight." Statement of Errors at 9; Record at 295-96.

In these circumstances, there was no error in omitting to address obesity. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 & n.5 (3d Cir. 2005) (declining to order remand on account of administrative law judge's failure to consider plaintiff's obesity when plaintiff "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments" and no medical evidence indicated obesity contributed to any limitation); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (declining to order remand on account of administrative law judge's failure to consider plaintiff's obesity when, "[a]lthough [the plaintiff's] treating doctors noted that [the plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 16th day of July, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge